## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PRIME HEALTHCARE SERVICES – LANDMARK, LLC, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | C.A. No. 1:23-CV-00131-MSM-PAS |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, ) ) ) ) | |
| Defendant. ) | |

### MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Before the Court is the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) of the defendant, Cigna Health and Life Insurance Company ("Cigna"). (ECF No. 11.) The Court must first consider whether the state-law claims of the plaintiff, Prime Healthcare Services – Landmark, LLC ("Landmark"), are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") for any claims involving ERISA-governed plans. Then, for the non-ERISA plans or for ERISA plans if the Court finds no preemption, the Court must consider whether Landmark's Complaint sets forth claims sufficient to meet the standard of Rule 12(b)(6).

## I.      BACKGROUND

The following facts are as alleged in Landmark's Complaint. At all relevant times, Landmark operated a hospital in Woonsocket, Rhode Island, which included an emergency department. (ECF No. 1-1 ¶¶ 1, 7.) Under both federal and state law,

Landmark was required to treat any patient who presented to the emergency room regardless of insurance status or inability to pay for the services. *Id.* ¶¶ 7-8 (citing the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, and R.I.G.L. § 23-17-26(a)).

Landmark provided emergency medical care to thousands of patients insured by Cigna healthcare plans, to the cost of millions of dollars. *Id.* ¶¶ 9-10. Landmark and Cigna did not have a provider agreement in place to set the specific rates that Cigna would pay for Landmark's services. *Id.* ¶ 12. Landmark therefore billed Cigna at what it asserts were reasonable rates. *Id.* ¶ 11. Cigna, however, did not adequately reimburse Landmark at the level of its billed charges or any reasonable rate. *Id.* ¶ 20. Instead, Landmark claims, Cigna employed a methodology of paying for out-of-network services at below-market rates, resulting in the underpayment for the emergency services that Landmark provided to Cigna-insured patients. *Id.* ¶ 21.

Landmark therefore filed suit in Rhode Island Superior Court, asserting five common-law causes of action under state law: unjust enrichment (Count I); quantum meruit (Count II); breach of implied-in-law contract (Count III); breach of implied-in-fact contract (Count IV); and promissory estoppel (Count V). Landmark expressly disclaims any potential claims "covered by self-funded ERISA plans for which no amount was allowed or paid by Cigna." *Id.* ¶ 27.

Cigna removed the case to this Court on the jurisdictional grounds of a federal question (28 U.S.C. § 1331), due to its assertion that some of the patient healthcare plans involved were governed by ERISA, and on the grounds of diversity of citizenship

(28 U.S.C. § 1332).

Cigna now moves to dismiss pursuant to Rule 12(b)(6).

## II.    MOTION TO DISMISS STANDARD

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court assesses the sufficiency of the plaintiff's factual allegations in a two-step process. *See Ocasio-Herandez v. Fortuno-Burset*, 640 F.3d 1, 7, 11-13 (1st Cir. 2011). "Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 699 F.3d 50, 55 (1st Cir. 2012). "Step two: take the complaint's well-pled (*i.e.,* non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Id.* "The relevant question … in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007)).

## III.    DISCUSSION

### A. ERISA Preemption

Cigna argues that ERISA preempts Landmark's state-law claims for services rendered to patients covered under ERISA-governed healthcare plans. "ERISA pre-empts 'any and all State laws insofar as they may now or hereafter relate to any

employee benefit plan' covered by ERISA." *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 86 (2020) (quoting 29 U.S.C. § 1144(a)). But "not every state law that affects an ERISA plan" is preempted; rather, a state law is preempted when it "relates to an ERISA plan" which is defined by having (a) "a connection with" or (b) "reference to such a plan." *Id.* (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001)); *see also Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 301-02 (1st Cir. 2005).

### 1. Impermissible Connection

To counter Cigna's argument that its claims "relate to" ERISA plans, Landmark offers a distinction: it seeks a remedy for the *amount* of payment, not the *right* of payment. In support, Landmark presents a significant body of case law indeed holding that disputes under state law about the rate of payment are not preempted by ERISA. *See, e.g.*, *Vigdor v. UnitedHealthcare Ins. Co.*, No. 3:21-cv-517, 2022 WL 17097764, at *5-8 (W.D.N.C. Aug. 17, 2022); *NEMS PLLC v. Harvard Pilgrim Health Care of Conn., Inc.*, 615 F. Supp. 3d 125, 141-42 (D. Conn. 2022); *Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.* No. 20-cv-9183, 2021 WL 4437166, at *8 (S.D.N.Y. Sept. 28, 2021); *Emergency Servs. of Okla., PC v. Aetna Health, Inc.*, 556 F. Supp. 3d 1259, 1264-65 (W.D. Okla. 2021); *Surgery Ctr. Of Viera, LLC v. Meritain Health, Inc.*, No. 6:19-cv-1694, 2020 WL 7389987, at *8 (M.D. Fla. June 1, 2020).

Cigna, though, points out its own distinction, which it argues renders Landmark's distinction irrelevant. Cigna notes that there are two types of ERISA preemption: complete preemption and defensive preemption. Complete preemption

applies when a federal statute "wholly displaces the state-law cause of action" relating to the same subject matter. *Aetna Health Inc. v. Davila,* 542 U.S. 200, 207 (2004). Regarding ERISA, complete preemption arises under 29 U.S.C. § 1132(a) (ERISA § 502(a)). Complete preemption applies when a state law provides an alternative mechanism for the enforcement of ERISA. *Rowe*, 429 F.3d at 305. In other words, if the claim could have been brought under ERISA's civil enforcement provision, the state claim is preempted.

Importantly, complete preemption is a jurisdictional question. *See Danca v. Priv. Health Care Sys., Inc.*, 185 F.3d 1, 4-5 (1st Cir. 1999). When a plaintiff's state-law cause of action is removed to federal court on the basis of complete preemption, and the court finds that the state-law claim should be preempted, the court will "re-characterize" the claim as a federal claim, thereby making the claim "arise under" federal law. *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 4 (1st Cir. 2012). "This is so because '[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'" *Davila*, 542 U.S. at 207-08 (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)). If the court does not find the state-law claim to be preempted, there is no federal question, and the matter is remanded to state court for want of jurisdiction.

Defensive preemption, as its name implies, is a federal affirmative defense. The First Circuit has described defensive preemption as "a loose concept" of which "a classic example is a state claim foreclosed because its assertion conflicts with a

federal statute or falls within a field preempted by federal law." *Cavallaro*, 678 F.3d at 5 n.3. Defensive preemption is not a source of federal question jurisdiction but instead "allows a defendant to defeat a plaintiff's state-law claim on the merits by asserting the supremacy of federal law as an affirmative defense." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1261 n.16 (11th Cir. 2011). Defensive preemption under ERISA arises under 29 U.S.C. § 1144(a) (ERISA § 514(a)) and preempts "laws that present the threat of conflicting and inconsistent regulation that would frustrate uniform national administration of ERISA plans." *Danca*, 185 F.3d at 7.

As Cigna correctly points out, there is no jurisdictional challenge before the Court. No matter how the federal question (the ERISA preemption issue) is determined, the parties do not dispute—and the Court agrees—that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Cigna therefore casts its argument as defensive preemption, which, again, implicates 29 U.S.C. § 1144(a) (ERISA § 514(a)).[1]

This is significant because Cigna argues that the cases that Landmark cited which make the rate of payment/right of payment distinction generally did so in the context of motions to remand to state court—a jurisdictional question involving the doctrine of complete preemption under 29 U.S.C. § 1132(a) (ERISA § 502(a)). Cigna principally relies on *Surgery Center of Viera v. Cigna Health and Life Insurance Company, Inc.*, No. 6:20-cv-152-Orl-37EJK, 2020 WL 4227428 (M.D. Fla. July 23,

---

[1] Cigna did present ERISA § 502 as a basis for removal of this case to this Court, with the assertion that "ERISA *completely* preempts the State Court Action," but appears to have abandoned that theory. (ECF No. 1 ¶ 21.) (Emphasis added.)

2020), which held that the rate/right distinction is relevant only to a complete preemption analysis because that analysis "is narrower than defensive ERISA preemption, 'which broadly supersedes any and all State laws insofar as they *relate to* any ERISA plan.'" (quoting *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1281 (11th Cir. 2005) (emphasis in original)).

All of this, however, leads the Court to the conclusion that while there is a distinction between complete and defensive preemption, the question really is whether the rate of payment versus right of payment distinction survives the defensive preemption test, which requires the "relate to" analysis of 29 U.S.C. § 1144 (ERISA § 514(a)). The Supreme Court's decision in *Rutledge* (incidentally, decided after *Surgery Center of Viera*), considered the "related to" analysis under 29 U.S.C. § 1144 and provides instruction. *See* 592 U.S. at 86.

There the Court held that to determine whether a state law has an impermissible "connection with" an ERISA plan, courts are to consider the objectives of ERISA. *Id.* "ERISA was enacted 'to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures.'" *Id.* (quoting *Gobeille* v. *Liberty Mut. Ins. Co.*, 577 U.S. 312, 320-21 (2016)). "ERISA is therefore primarily concerned with pre-empting laws that require providers to structure benefit plans in particular ways, such as by requiring payment of specific benefits or by binding plan administrators to specific rules for determining beneficiary status. A state law may also be subject to pre-emption if acute, albeit indirect, economic effects of the state law force an ERISA plan to adopt a certain

scheme of substantive coverage." *Id.* at 86-87 (internal citations omitted).

Thus, "ERISA does not pre-empt state rate regulations that merely increase costs or alter incentives for ERISA plans without forcing plans to adopt any particular scheme of substantive coverage." *Id.* at 88; *see also Merit Constr. All. v. City of Quincy*, 759 F.3d 122, 128 (1st Cir. 2014) (holding that "not every conceivable connection" with an ERISA plan "will support preemption" and that "state laws that merely exert an 'indirect economic influence' on a plan' ... do not come within ERISA's preemptive reach.")   Indeed, cost uniformity across various states "was almost certainly not an object of pre-emption." *Rutledge*, 592 U.S. at 88.

Here, in its Complaint, Landmark has expressly disclaimed any instances where it received no payment from Cigna for patients "covered by self-funded ERISA plans." (ECF No. 1-1 ¶ 27.)  Instead, it challenges the rate of payment for instances where Cigna *did* pay something but (in Landmark's view) less than the reasonable value.  The Court finds as controlling the principles enunciated in *Rutledge*—that state laws that "merely increase costs" or are "form[s] of cost regulation" "do[] not have an impermissible connection with an ERISA plan." 592 U.S. at 88.  As such, this Court finds that Landmark's state-law claims, as pled, do not have an impermissible connection with an ERISA plan and therefore they are not preempted on that basis under 29 U.S.C. § 1144.[2]

---

[2] The Court notes that it is of no moment that Landmark premises its claim on state common-law causes of action instead of a state statute or regulation as in *Rutledge*. This is not a significant distinction because the Court is persuaded that these common-law doctrines, as pled in the Complaint, "operate akin to rate regulations

## 2. Reference to ERISA

Despite not having an impermissible connection with an ERISA plan, Landmark's claims would be preempted if they "refer to" an ERISA plan. *See Rutledge*, 592 U.S. at 88. But Landmark's claims do not "refer to" ERISA plans because they do not "act immediately and exclusively upon ERISA plans," and "the existence of ERISA plans" is not "essential" to Landmark's claims. *See id.* Indeed, Landmark's claims aim across the board, "regardless of whether the commercial coverage [was] ultimately secured by an ERISA plan, private purchase, or otherwise." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995). Moreover, the remedy that Landmark seeks is the reasonable rate, or fair market value, of the services it rendered. This calculation would require reference to no specific plan, ERISA or otherwise. *Cf. Hampers v. W.R. Grace & Co.*, 202 F.3d 44, 52 (1st Cir. 2000) (holding that "ERISA preempts state law causes of action for damages where the damages must be calculated using the terms of an ERISA plan").

Because the claims asserted in Landmark's Complaint do not "refer to" or have a "connection with" an ERISA plan, ERISA does not preempt them.

## B. State-Law Causes of Action

Cigna next argues that Landmark's state-law causes of action fail as a matter of law for non-ERISA plans or for ERISA plans should the Court find the claims not

---

and, accordingly, are not preempted." *See Emergency Servs. of Oklahoma, PC v. Aetna Health, Inc.*, 556 F. Supp. 3d 1259, 1264 (W.D. Okla. 2021).

preempted.

### 1.  Quantum Meruit and Unjust Enrichment (Counts I and II)

Although distinct causes of action, under Rhode Island law the elements of quantum meruit and unjust enrichment are "identical." *S. Cnty. Post & Beam, Inc. v. McMahon*, 116 A.3d 204, 211 (R.I. 2015).  Thus, like the parties, the Court will analyze these two claims together.[3]  To satisfy these claims, a plaintiff must demonstrate that "(1) the plaintiff conferred a benefit on the defendant, (2) the defendant appreciated the benefit, and (3) under the circumstances it would be inequitable for the defendant to retain such benefit without payment of the value thereof." *Process Eng'rs & Constructors, Inc. v. DiGregorio, Inc.*, 93 A.3d 1047, 1053 (R.I. 2014).

Cigna maintains that Landmark cannot sustain claims for quantum meruit or unjust enrichment because by providing medical services to its patients, a provider confers a benefit on the individual patient, not the insurer.  Cigna backs up this assertion with case law from various jurisdictions, where such claims were dismissed on that theory.  (ECF No. 11 at 9-10.)  But Landmark counters with its own citations from other courts outside of this jurisdiction that hold that providers of emergency services, particularly statutorily mandated emergency services, conferred a material

---

[3] Quantum meruit and unjust enrichment are nevertheless distinct theories.  The Rhode Island Supreme Court has "described the nuanced distinction between unjust enrichment and quantum meruit as follows: While unjust enrichment focuses on the propriety of a payee or beneficiary retaining funds or a benefit, quantum meruit's primary focus is on the value of services rendered." *IDC Clambakes, Inc. v. Carney as Tr. of Goat Island Realty Tr.*, 246 A.3d 927, 933 (R.I. 2021).

benefit on the insurer.  (ECF No. 13 at 13-14.)  Further, Landmark notes, Cigna's cited cases included non-emergency services.  Though in reply Cigna presents additional precedent, all of it very recent, dismissing a provider's quantum meruit claims for emergency services.  (ECF No. 16 at 8-9.)

Of course, none of these cases are binding on this Court, which, sitting in diversity and applying Rhode Island law, must, in the absence of directly controlling precedent, "make an informed prophecy as to the state court's likely stance." *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008). Landmark's theory is based on the Restatement (Third) of Restitution and Unjust Enrichment, the relevant portion of which Landmark quotes in its Complaint.  (ECF No. 1-1 ¶ 15.)  Specifically, Illustration 10 from the Restatement (Third) of Restitution and Unjust Enrichment § 22:

> Hospital provides emergency services to patients enrolled with Managed Care Organization, at rates established under a contract designating Hospital a "preferred provider."  The contract expires ….  Hospital continues to provide services to MCO's patients nevertheless.  MCO tenders payment for these services at the "preferred" rate fixed by the prior agreement; Hospital demands compensation at the higher, "standard" rate invoiced to uninsured patients.  The court finds that there is no contract, express or implied, to fix the price of Hospital's services on either basis.  Hospital's right to payment from MCO rests on a claim in restitution under § 22(2)(b); MCO's unjust enrichment is measured by the reasonable value of the services rendered by Hospital (§ 50(2)(b)).

"Rhode Island courts frequently turn to the Restatement to fill gaps in state law." *Gibson v. City of Cranston*, 37 F.3d 731, 736 (1st Cir. 1994).  And more specifically, the Rhode Island Supreme Court consistently has followed the Restatement (Third) of Restitution and Unjust Enrichment.  *See, e.g., IDC*

11

*Clambakes, Inc. v. Carney as Tr. Of Goat Island Realty Tr.*, 246 A.3d 927, 933 (R.I. 2021); *Roadepot, LLC v. Home Depot, U.S.A., Inc.*, 163 A.3d 513, 523 n.5 (R.I. 2017); *Cote v. Aiello*, 148 A.3d 537, 550 (R.I. 2016); *Bank of Am., N.A. v. P.T.A. Realty, LLC*, 132 A.3d 689, 693 (R.I. 2016); *McMahon*, 116 A.3d at 213 n.3; *Zambarano v. Ret. Bd. of Emps. Ret. Sys. of R.I.*, 61 A.3d 432, 438 (R.I. 2013); *Toupin v. Laverdiere*, 729 A.2d 1286, 1288-89 (R.I. 1999). This Court anticipates that the Rhode Island Supreme Court would follow the Restatement (Third) of Restitution and Unjust Enrichment in this case and therefore finds that Landmark has sufficiently pleaded the causes of action of unjust enrichment and quantum meruit.

### 2. Breach of an Implied-in-Law Contract (Count III)

Cigna argues that Landmark's breach of an implied-in-law contract claim must fail because on that Count the Complaint references Rhode Island statutes regarding a healthcare insurer's obligation to pay. (ECF No. 1-1 ¶ 42 (citing R.I.G.L. §§ 27-18-76, 27-41-79).) But Cigna argues, and the Court's reading of the Complaint confirms, that the claim is based in common law and the statutes are illustrative of Landmark's assertion that Cigna cannot unilaterally determine the rate of payment. *See id.* ("Cigna's payment obligation is further confirmed by Rhode Island statute….").

The elements of a claim for breach of an implied-in-law contract are the same as those for unjust enrichment and quantum meruit. *See Hurdis Realty, Inc. v. Town of N. Providence*, 397 A.2d 896, 897 (R.I. 1979). Indeed, Cigna acknowledges that the breach of an implied-in-law contract claim is "essentially a retread" of the quasi-contractual claims of unjust enrichment and quantum meruit. (ECF No. 11 at 10.)

And for the reasons stated regarding those claims, the Court will deny Cigna's motion to dismiss this claim of a breach of an implied-in-law contract.

### 3. Breach of an Implied-in-Fact Contract (Count IV)

"An implied-in-fact contract 'is a form of express contract wherein the elements of the contract are found in and determined from the relations of, and the communications between the parties, rather than from a single clearly expressed written document." *Cote*, 148 A.3d at 545. The "essential elements of contracts 'implied in fact' are mutual agreement, and intent to promise, but the agreement and the promise have not been made in words and are implied from the facts." *Bailey v. West*, 249 A.2d 414, 416 (R.I. 1969). In evaluating these elements, courts "look to the 'parties' conduct, actions, and correspondence." *Cote*, 148 A.3d at 545.

Cigna asserts that the Complaint does not plausibly set forth a claim for breach of an implied-in-fact contract because courts have held that a routine preauthorization process between a provider and insurer for the performance of medical services does not create an implied contract. But a reading of the Complaint indicates that Landmark goes beyond alleging that only the preauthorization created an implied-in-fact contract. Landmark alleges that Cigna authorized it to perform post-stabilization services for Cigna's insureds; that Landmark agreed to perform those services; and, importantly, that Cigna agreed to pay the reasonable and customary rates for those services. (ECF No. 1-1 ¶¶ 46-49.) Cigna then elected not to transfer its members to in-network hospitals, but instead agreed to Landmark treating the patients. *Id.* ¶ 49. Then, Landmark alleges, Cigna underpaid for those

services.  *Id.* ¶ 52.

Cigna, however, presents two sets of its claims adjudication documents, which it had attached to its Notice of Removal, and asserts these were in effect for two of the patients comprising Landmark's claims.  These documents appear to belie the allegation that Cigna promised to pay at any particular rate.  But these documents are outside of the Complaint and are improper to consider on a motion to dismiss unless they meet an exception such as "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).  Landmark disputes the authenticity of these documents and that they are referred to in its Complaint.  But perhaps more importantly, the substance of these two claims adjudication documents do not necessarily encompass the "thousands of patients insured by Cigna healthcare plans" to whom Landmark provided emergency services and apparently serve as the basis of its claims.  (ECF No. 1-1 ¶ 9.)  As such, the Court finds that some discovery is necessary before it could properly consider these outside documents for the dismissal of the entire claim.  The Court considers now only the Complaint, which, at least at this early pleading stage, plausibly states a claim for breach of an implied-in-fact contract.

### 4.  Promissory estoppel (Count V)

A claim for promissory estoppel under Rhode Island law requires (1) a clear and unambiguous promise, (2) reasonable and justifiable reliance upon the promise;

and (3) detriment to the promisee, caused by his or her reliance on the promise. *Filippi v. Filippi*, 818 A.2d 608, 625 (R.I. 2003).

Cigna's arguments here are similar to those it made regarding the implied-in-fact contract claim; that is, the preauthorization to perform medical services does not create a clear and unambiguous promise to pay at a particular rate and the claims documents that Cigna attached to its memorandum demonstrate that no promise was made. Again, however, at least at this early pleading stage, the Court is satisfied that Landmark's Complaint—which is the only document the Court currently is considering—sets forth a plausible claim.

## IV.    CONCLUSION

Because the Court concludes that Landmark's claims are not preempted by ERISA and its Complaint is otherwise sufficient to meet the standard of Rule 12(b)(6), the Court DENIES Cigna's Motion to Dismiss (ECF No. 11).


IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge
January 31,2024